UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                   :

   UNITED STATES OF AMERICA      :

                                            :

      - v. -                            :

                                            :     S1 15 Cr. 874 (CM)

   YIMMY JAFET MONTANO        :
   PRECIADO,                         :

                                            :

                Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S SENTENCING SUBMISSION

 

JOON H. KIM
Acting United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

Amanda L. Houle
Jason M. Swergold
Assistant United States Attorney
   -Of Counsel-



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

**REQUEST TO BE FILED UNDER SEAL**
April 24, 2017

**BY ECF and E-MAIL**

Honorable Colleen McMahon, Chief Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re: *United States* v. *Yimmi Jafet Montano Preciado*, S1 15 Cr. 874 (CM)

Dear Judge McMahon:

    The defendant, Yimmi Jafet Montano Preciado, is scheduled to be sentenced on May 1, 2017, for his offense in this case; namely, conspiracy to distribute and possess with the intent to distribute cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of Title 46, United States Code, Section 70506. The Government respectfully makes this submission in advance of the sentencing.

    Under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G."), the parties and the United States Probation Department ("Probation") agree that the Guidelines range applicable to the defendant's conduct is 87 to 108 months' imprisonment. For the reasons set forth below, the Government respectfully submits that the offense warrants an incarceratory sentence below the Guidelines range.

## Background

**A.    Offense Conduct**

    As set forth in the Presentence Report ("PSR"), on or about October 16, 2015, a JIATF-South aircraft was on routine patrol approximately 174 nautical miles off of the coast of Guatemala and El Salvador when one of its occupants saw a go-fast vessel (the "Go-Fast") in the water. (PSR ¶ 10). A Coast Guard cutter ("Cutter") was dispatched to intercept the Go-Fast. (PSR ¶ 11). The Cutter launched its helicopter and a patrol boat ("Patrol Boat"). (PSR ¶ 11). The helicopter crew observed packages on the bow of the Go-Fast, and saw no signs of nationality on the vessel. (PSR

1

¶ 11). After the crew of the Go-Fast saw the helicopter, they stopped their vessel in the water. (PSR ¶ 11).

Members of the Coast Guard boarding team (the "Boarding Team") aboard the Patrol Boat boarded the Go-Fast and found the defendant and two other crewmembers. (PSR ¶ 12). None of the crewmembers claimed nationality for the vessel, but the Boarding Team saw a painted Colombian flag and the name of an Ecuadorian city on the hull. (PSR ¶ 13). After contacting both Colombian and Ecuadorian authorities, neither of which could confirm or deny the nationality of the Go-Fast, the Coast Guard treated the Go-Fast as a vessel without nationality. (PSR ¶ 15). The Boarding Team seized 16 bales, which contained approximately 641 kilograms of cocaine. (PSR ¶ 16).

### B. The Charges and the Defendant's Guilty Plea

The one-count superseding Information charges that the defendant conspired to manufacture, distribute, and possess with the intent to distribute cocaine while onboard a vessel subject to the jurisdiction of the United States. (PSR ¶ 1). On December 30, 2016, the defendant pleaded guilty to the Information. (PSR ¶ 3).

### C. The Guidelines Range

The parties do not dispute the PSR's calculation of the offense level under the Guidelines, which calculates the applicable offense level as 29 (PSR ¶ 31) and the defendant's Criminal History Category as I (PSR ¶ 34). This results in a Guidelines range of 87 to 108 months' imprisonment. (PSR ¶ 64).

## Discussion

The general purposes of sentencing include the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See United States* v. *Park*, 758 F.3d 193, 197 (2d Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)). In the Government's view, an incarceratory sentence, but one below the Guidelines range, is sufficient to serve the goals of sentencing. Such a sentence would dissuade the defendant from participating in this conduct again. Furthermore, an incarceratory term of imprisonment would help to assure that others also do not engage in the same conduct themselves.

To be sure, the Government does not assert that the defendant is a significant drug trafficker. But the Government does contend that the role that the defendant played is an essential one to the narcotics trade. Before cocaine can be distributed to other parts of the world, including the United States, it must first be transported from South America. That is a fundamental and key step in trafficking cocaine. That is the role that, in this shipment, the defendant played.

Dissuading individuals from agreeing to participate in this stage of the distribution activity is an important means of disrupting narcotics trafficking. In the impoverished fishing towns of Colombia and Ecuador, transporting hundreds of kilograms of cocaine by boat presents an

2

attractive offer for those willing to make the trip. One way to deter both the defendant from re-offending, and others from committing the same conduct, is to demonstrate that engaging in such conduct will come with serious consequences, such as a significant term of imprisonment. Imposing a significant term of imprisonment will thus serve both specific and general deterrence, two aims of the sentencing regime. The Government respectfully submits that, while a Guidelines sentence is not necessary to serve those purposes, a substantial term of imprisonment is.

Of note, while courts in this District have sentenced similarly situated defendants to sentences ranging from time served to 24 months' imprisonment, these sentences are significantly lower than sentences imposed on similarly situated defendants in other districts who have committed similar conduct. *See generally*, United States v. *Trinidad*, 839 F.3d 112 (1st Cir. 2016) (defendant caught with 144 kilograms of cocaine, and who received a two-point navigator enhancement, sentenced to 108 months' sentence); United States v. *Wilchombe*, 838 F.3d 1179 (11th Cir. 2016) (defendants caught with 35 kilograms of cocaine and 860 kilograms of marijuana sentenced to 120 months' imprisonment); United States v. *Macias*, 654 Fed. App'x 458 (11th Cir. 2016) (defendant caught with approximately 300 kilograms of cocaine sentenced to 120 months' imprisonment); United States v. *Persaud*, 605 Fed. App'x 791 (11th Cir. 2015) (defendant caught with approximately 1200 kilograms of marijuana sentenced to 132 months' imprisonment); United States v. *Nueci-Pena*, 711 F.3d 191 (1st Cir. 2013) (defendant caught with over 1140 pounds (approximately 517 kilograms) of cocaine and heroin sentenced to 24 years' imprisonment). *See also* 18 U.S.C. § 3553(a)(6) (directing courts to consider at sentencing "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").



Ultimately, an incarceratory term of imprisonment is necessary to reflect the nature, circumstances, and seriousness of the offense, to promote respect for the law, and to provide just punishment. *See* 18 U.S.C. § 3553(a)(1), (2)(A). But for the interdiction of the Go-Fast, the defendant would have been responsible for delivering approximately 681 kilograms of cocaine – an exorbitant amount with an estimated street value in New York City of over $10 million – from its point of supply in Colombia, up the distribution chain to Central America, where it becomes almost impossible to stop from coming into the United States. *See See* Lt. Comm. Brendan Gavin, et. al., *U.S. Southern Command's Role in Combatting Illicit Trafficking*, 4 U. Miami Nat'l Sec. & Armed Conflict L. Rev. 12, 16, 17 (2014) (noting that "approximately 95% of cocaine entering the U.S. travels through Central America" and "[o]nce ashore in Central America, there is almost no stopping the majority of this cocaine before it enters the United States and lands on street corners across America."); *United States* v. *Carvajal*, 924 F. Supp. 2d 219, 242 (D.D.C. 2013) ("It is beyond peradventure that illegal drugs are a problem in the United States, and, specifically, that cocaine imported to the United States from Colombia is a major part of that problem."), *aff'd sub nom. United States* v. *Miranda*, 780 F.3d 1185 (D.C. Cir. 2015).

## **Conclusion**

For the reasons set forth above, the Government does not seek a Guidelines sentence, but respectfully submits that the defendant should be sentenced to a term of imprisonment.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: _____/s/_____
Jason M. Swergold
Amanda L. Houle
Assistant United States Attorneys
(212) 637-1023/2194